firmed in 159 N. Y. 250, 53 N. E. 1103; In re Pierson, 44 App. Div. 215, 60 N. Y. Supp. 671. The facts which make it proper to exercise its discretion in a given case must be made to appear by the moving papers, and unless those facts exist the discretion of the court will not be exercised. By section 2070 of the Code of Civil Procedure, a peremptory writ of mandamus can be granted only where a question of law is presented to the court; and, in the construction of that statute, it has been held that where the allegations in the moving papers which are relied upon to warrant the issue of a peremptory writ are denied, or contradictory or explanatory facts are set up in the opposing affidavits, the writ will be granted only when a case is made assuming that the facts set up in the opposing affidavits are true. People v. City of Brooklyn, 149 N. Y. 223, 43 N. E. 554; People v. Keating, 49 App. Div. 123, 63 N. Y. Supp. 71. The respondent here has denied nearly all of the material facts set up in the moving papers upon which the court was asked to exercise its discretion, and, if those are excluded from consideration, sufficient is not shown to require the court to grant the writ, and the denial of the motion was proper.

But it has also been held that a peremptory writ of mandamus will not be granted to compel a corporation to exhibit its books and papers for the purpose of ascertaining whether facts exist which would authorize an application to the attorney general to dissolve the corporation or to appoint a receiver, or to enable the relator to begin criminal proceedings against the officers of the corporation for a violation of their duties. In re Pierson, supra. As it is alleged in the petition here that the object of this application is to obtain information to be placed at the disposal of the district attorney and the attorney general, and also to be used to cause the parties to make good any deficit occasioned by their misconduct, it would seem that the case just cited also affords a good reason why this motion should be denied, irrespective of any dispute as to the facts in the moving papers.

The order should therefore be affirmed, with $50 costs and disbursements.

PATTERSON, O'BRIEN, and HATCH, JJ., concur.

VAN BRUNT, P. J. (dissenting). I think that under the rule established in the Steinway Case, 159 N. Y. 250, 53 N. E. 1103, the motion should have been granted. I therefore dissent.

---

### STEWART v. STEWART.

(Supreme Court, Appellate Division, Second Department. May 8, 1900.)

1. DIVORCE—CONFESSIONS OF DEFENDANT—ADMISSIBILITY.

Where, in divorce, it appears that defendant's confessions to acts of adultery were made in good faith, and not in furtherance of a collusion between the parties to have the marriage annulled, they are admissible in evidence against him.

**2. SAME—ADULTERY—EVIDENCE—SUFFICIENCY.**

In divorce on the ground of the husband's adultery, three witnesses testified that defendant had admitted his guilt, and were contradicted only by defendant and his alleged co-respondent. Several letters of defendant hinting at like admissions were also offered, defendant's only explanation of them being that they were written under the influence of despondency. *Held*, that the evidence was sufficient to support the finding of the referee that defendant was guilty of adultery.

**3. SAME—ALIMONY—AMOUNT.**

Where it appeared that defendant had an income of about $3,300 per year as a physician, and owned personalty worth $4,600, besides $500 in bank, and that plaintiff owned a house valued at $7,800, with a mortgage of $5,000 against it, $6,000 in a trust company awaiting investment, and about $120 annually from other sources, an allowance of $650 per annum as alimony to plaintiff, and $500 per annum for the maintenance and education of her child, was a fair allowance.

Appeal from judgment on report of referee.

Action by Cornelia Hollingsworth Stewart against James Alexander Stewart for annullment of marriage. From a judgment of the supreme court entered on a finding of the referee in favor of plaintiff, defendant appeals. Affirmed.

The following is the opinion of McKEEN, Referee:

At the close of the plaintiff's case a motion was made to dismiss the complaint in this action, which was argued orally at considerable length, and upon which briefs were submitted; the main contentions then presented on behalf of the defendant being that there had been no proof sufficient to sustain the allegations in the complaint, and, further, that, as to the first three specified allegations of adultery charged, such acts, if proved, had been condoned by the plaintiff's conduct, and that, as to the fourth act charged, if there was any evidence of improper conduct on the defendant's part, it was by the plaintiff's procurement, or with her connivance. This motion was denied by me, and the reasons were entered at some length in the minutes of January 9, 1899. As then stated, the evidence created a conviction on my part that the defendant had committed adultery substantially as charged in the complaint, and I felt bound to give effect to that conviction by denying the motion then made. I was also of the opinion that the contentions made on behalf of the defendant as to condonement, connivance, and procurement were not well founded. The case then proceeded, and testimony has been given by the defendant himself, by Louisa Benecke, and by Walter L. Durach, witnesses called by the defendant; and, on the plaintiff's behalf, further testimony has been taken of Thomas Hollingsworth and John H. Hollingsworth. None of this additional testimony changes the legal aspect of the questions presented as to alleged condonement, connivance, and procurement, and I discover no reason for adding anything to what was stated on January 9th upon that aspect of the case. Both the defendant himself and Louisa Benecke have testified positively, denying the alleged adultery. The defendant also has very positively denied making at any time any confessions or admissions of guilt, and, by explanatory testimony, has sought to put a construction upon his letters written to his wife consistent with his innocence of the charges made in the complaint. He was also interrogated on his cross-examination as to his statements which it was suggested he had made to Thomas Hollingsworth and John H. Hollingsworth, and he has denied having made any statements to either of them confessing or admitting any improper conduct between himself and Louisa Benecke. The testimony of Mr. Durach simply bore upon the whereabouts and general conduct of the defendant upon the steamboat Adirondack on the evening of August 6th, tending to contradict some of the testimony of the witnesses Pearsall and Burton. Notwithstanding the testimony given by the defendant and on his behalf, I am still impelled to believe that acts of adultery were committed by him substantially as alleged in the complaint, at the place stated and between the 1st day of June, 1898, and the date of the summons in this

action. In view of the very earnest contention made on the defendant's behalf that the evidence does not warrant such a judicial conclusion, and particularly his contention that there is no direct evidence absolutely proving the acts of adultery charged, and that the confessions and admissions of the defendant, even if proved to have been made, do not, in divorce cases, warrant a conclusion of guilt, it may be proper to state some of the reasons which have impelled such a conviction on my part, and also briefly to consider the legal questions urged as to the force which can properly be given to the admission and confessions of a party in divorce actions.

The force of confessions and admissions in actions of this character has been impaired because they have so often been a part of a scheme of collusion between the parties. In great numbers of divorce cases which have come before the courts, husbands have been persuaded to create a case against themselves, either from selfish desire to be set free from the marriage, or sometimes from a falsely chivalric notion that a wife should be thus relieved from further conjugal obligation. In all such cases, of course, the confessions are part of a scheme of imposition upon the courts. Moreover, they are not competent evidence, because in such cases they are not admissions against interest. In this case it is not disputed that the letters in evidence were written by the defendant himself, and it seems to me to be established beyond any reasonable doubt that he orally admitted a liaison with Louisa Benecke to the plaintiff's brother Mr. Thistle, to her uncle Mr. Thomas Hollingsworth, and to her cousin Mr. John H. Hollingsworth. He does not explain these admissions on any theory of collusion. On the contrary, as above stated, he strenuously denies· ever having made any of the oral confessions testified to by Mr. Thistle and the Hollingsworths. He also denies ever having done anything in his relations to the girl Louisa warranting a suspicion of misconduct. The course of the defendant and his counsel, and the latter's earnest defense of the action, eliminate from the case any idea of collusion between the parties. In such a case the courts have repeatedly decided that admissions and confessions of a party are entitled to all the weight in an action for divorce that is to be given to them in any other action. And it seems to me that sworn testimony denying the acts admitted is entitled to less force in divorce cases than it is in ordinary actions, because it must be said, however strongly we may condemn the doctrine, that society is too tolerant of perjury in such cases. A belief here in the truth of the testimony of the defendant and of Louisa Benecke involves holding that all the plaintiff's witnesses have willfully testified falsely. Not only is the fact clearly established in my mind that these confessions were made, but it is also proved beyond any reasonable doubt that the defendant on repeated occasions in his own house acted towards the servant, Louisa Benecke, in a manner very plainly indicating lascivious relations between him and her; and the confessions made must be interpreted in connection with this course of conduct. It is true that the letters written by the defendant do not contain expressions which in so many words are confessions of the acts here in question. The contention made by the defendant and on his behalf is that these letters were written by the defendant in a perturbed mental condition, when left alone in the house after his wife had gone, taking with her the child, and also taking the furniture which belonged to her. It is very true that the situation was one which naturally would create a feeling of despondency, and, whatever view one may take as to where the responsibility must be placed for such a condition of things, sympathy may well be felt for a man in such a predicament. The point, however, for consideration here is what inference of fact must be drawn from the expressions in these letters. It must be borne in mind that they were all written shortly after the complaint in this action had been served upon the defendant, and he himself states that he read it over a number of times. Before some of the letters were written he had consulted counsel as to the course to be pursued. He claims that the expressions of remorse and penitence in these letters had reference to acts of unkindness towards his wife, and acts which had led to estrangement between them. He was, however, by these letters seeking reconciliation with Mrs. Stewart; and, to my mind, it is wholly incredible that, if he was really innocent of the charges of infidelity made in this complaint, he should omit to protest his innocence. It would seem that the very first step towards the reconciliation desired

65 N.Y.S.—59

would have been in satisfying her that she was in this matter entirely unjust. It was also due to the servant, Louisa, that he should protest against the wrong done her in such a charge. The character of these letters, the language used in them, the declarations of the defendant in the conversations with his wife's brother and other relatives, impel a belief that the charges were true, and that at that time the defendant supposed they could be clearly proved to be so in a court of justice, and that there was no use denying them. It is therefore my opinion that the plaintiff is entitled to judgment annulling the marriage.

The remaining question is as to what provisions should be embodied in the judgment as to the custody of the child, and what is a proper sum to be allowed to plaintiff for alimony and for the support, maintenance, and education of the child. I find from the evidence submitted that the defendant has no real property, and that the value of his personal property is less than $3,000; that he held, at a time shortly before the beginning of the action, a Passaic water bond for $1,000, a mortgage for $600 on Paterson property, about $500 in money, and some interest in a cotton gin, of uncertain value, and I am unable to find from the evidence what income is derived therefrom. I find that he is a physician, and engaged in the practice of his profession; that his income for the year 1896 from his practice was $3,255.73, and for the year 1897 $3,-436.50,—these amounts appearing in the defendant's books of account in evidence. I find, also, from the defendant's testimony and said books, that his receipts in the practice of his profession have materially fallen off since the beginning of this action, and have latterly been insufficient to cover his expenses; but his exact income at the present time is not accurately shown, and the expenses testified to are not stated accurately, but in great measure estimated. It furthermore appears that the falling off in defendant's income has been largely due to the disturbance of his domestic relations. It does not appear that he has suffered any material impairment of health or that there is any permanent impairment of earning capacity, except that such a matter as this must, naturally, for a considerable time, have the effect of diminishing a physician's professional income. I find that the plaintiff owns the house in Bedford avenue in which she and her husband heretofore resided; that it cost $7,800, and is subject to a mortgage of $5,000; that she is interested in a Maryland coal company, yielding about $120 per annum; owns some vacant lots in Jersey City, of undetermined value; has an undivided reversionary or remainder interest, of slight and undetermined value, in property at Tenth avenue and Eighteenth street, New York; some $6,000 in a trust company, awaiting investment; and several hundred dollars in bank. Having regard to the circumstances of the respective parties, in my opinion a just requirement will be that the defendant pay at the rate of $500 per annum for the support, education, and maintenance of the child, to be paid over to the plaintiff for that purpose, and $650 per annum for alimony; such payments to be made in monthly installments at the beginning of each month. The defendant should also be required to pay the costs of this action. These amounts seem hardly adequate to the proper maintenance of the plaintiff as suitable, in view of the present condition of things, and having in mind the right of the plaintiff to apply hereafter for an increase under the provisions of section 1759 of the Code of Civil Procedure. The custody of the child should be awarded to the plaintiff, and provision should be made permitting the father to visit the child at reasonable times, in the presence of some other person. I have prepared a formal report, embodying the facts and conclusions above stated.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, and HIRSCHBERG, JJ.

McGuire, Low & Burr, for appellant.
C. H. Otis, for respondent.

PER CURIAM. Judgment affirmed, with costs, upon the opinion of the referee.